SANDMEYER v. DAKOTA FIRE & MARINE INSURANCE CO.

1.  When the court below grants a new trial solely on the ground of alleged errors of law occurring at the trial, an appeal to this court from the order granting such new trial presents only a question of law to be determined by this court, and the judicial discretion of the court below is not involved.

2.  An instrument purporting to be an assignment for the benefit of creditors, which on its face does not purport to be an assignment of all the debtor's property, is in law a partial assignment.

3.  An instrument that does not purport to be made by an insolvent debtor, and to convey all the debtor's property not by law exempt, does not constitute an assignment under the statute of this state providing for assignments by insolvent debtors.

4.  When an instrument purporting to be an assignment for the benefit of certain creditors was made and executed in the State of Texas, and no evidence is given or offered by either party as to the law of Texas relating to such an assignment, this court will presume that the law of Texas is the same as our own upon that subject.

5.  An assignment for the benefit of creditors that conveys to the assignee the absolute legal and equitable title to the assigned property, free from the control of the debtor, charged with a trust for the payment of all or of certain designated debts of the debtor, constitutes the assignee "the trustee of an express trust," who is authorized to bring suit in his own name, by Section 4872, Comp. Laws.

6.  But when a debtor transfers money or other property to a third person to pay certain debts of the debtor to certain designated creditors, without transferring absolutely the legal and equitable title, free from the debtor's control, the relation of such third party to the debtor is that of an agent; and such third party cannot maintain an action relating to such money or property in his own name, he being neither "the trustee of an express trust" nor "the real party in interest."

7.  An instrument purporting to be a partial assignment for the benefit of creditors that provides that the assignor does transfer and assign to a third person for the purpose of securing certain claims due and owing to certain designated creditors of the assignor certain designated insurance policies, followed by a clause providing that said third person is fully authorized and empowered to collect such policies and receipt for all moneys collected in the name of the assignor, and providing further that such receipt shall be binding upon the assignor, only authorizes such third person to collect such insurance policies in the name of the assignor; and such an instrument is not competent to prove an allegation in plaintiff's complaint alleging that the policy in question (being one of the number specified in the instrument) had been duly assigned to plaintiff, and such instrument was properly excluded by the court.

(Syllabus by the Court.    Opinion filed November 24, 1891.)

Appeal from circuit court, Davison county. Hon. D. HANEY, Judge.

Action on fire insurance policy. Judgment for defendant. Motion for new trial made and granted. Defendant appeals from that order. Reversed.

The facts are fully stated in the opinion.

*Dillon & Preston,* for appellant.

Where the evidence is manifestly and palpably in favor of the verdict, an order granting a new trial for insufficiency of evidence will be reversed. Hicks v. Stone, 13 Minn. 434. If it appears upon the record that the order was based upon a misapprehension of the law, it becomes an error of law which obviates the necessity of determining whether there was any abuse of discretion in the trial court. Miller v. Haberkorn, 32 N. W. 293; Fairbanks v. Holliday, 17 N. W. 675; Smith v. Dreggart, 21 N. W. 46.

An agent can have no greater power than is granted him. Brewster v. Carnes, 103 N. Y. 556; Ritch v. Smith, 82 N. Y. 627; Smith v. Johnson, 71 Mo. 382.

The relation between the plaintiff and Harrison was simply that of principal and agent, subject to be revoked, and these relations would continue until the creditors assented to the proceeding, and thereby constituted the plaintiff their agent or trustee. Brewster v. Carnes, 103 N. Y. 556; Smith v. Johnson, 71 Mo. 382; Simonton v. Bank, 24 Minn. 216; Brockmeyer v. Bank, 19 Pac. 855; Lazarus v. Swan, 17 N. E. 655; Comley v. Dazian, 114 N. Y. 161; Christmas v. Russell, 14 Wall. 70; Kelly v. Morris, 40 N. Y. 432; West v. White, 22 N. W. 217; Witter v. Little, 23 N. W. 909; Comp. Laws, § 4007.

The alleged assignment is simply a trust in the nature of a mortgage. Hoffman v. Mackall, 5 Ohio St. 124; Burrell on Assignments. § 6; Hargadine v. Henderson, 11 S. W. 218; Palmer v. Mason, 3 N. W. 945; Leitch v. Hollister, 4 N. Y. 211; Jones on Chat. Mtg's, § 352.

The only assignment authorized by the insolvent law of this state is a general and not a partial one. May v. Walker, 28 N. W. 252; Campbell v. Colorado Co., 7 Pac. 291; Palmer v.

Mason, 3 N. W. 945; Kohn v. Clement, 12 N. W. 550; Carson v. Byers, 25 N. W. 826; Carter v. Rewey, 22 N. W. 129; Gage v. Parry, 29 N. W. 822.

The plaintiff's right to represent the beneficiaries cannot appear without showing the facts which create the trust. In such cases the facts must be stated and with such certainty that they may be traversed. Bliss on Code Pl. § 262; Abbott's Forms, Vol. 1, 131; Estee, Pleadings, Vol. 1, 207; Wheeler v. Hawkins, 101 Ind. 486; Freeman v. Fulton Ins. Co. 13 Abb. Pr. 407.

*A. E. Hitchcock*, for respondent.

It is within the discretion of the trial judge to set aside a verdict and grant a new trial. This action will not be reversed unless it appears that there has been an abuse of such discretion. Miller v. Herberkorn, 32 N. W. 298.

This instrument of assignment must be interpreted according to §§ 3551, 3556, 3562 and 3568, Comp. Laws. The instrument relied upon is a valid assignment. Burrell on Assignments, Chap. 8, §§ 130-150; Page v. Weymouth, 47 Me. 238; 12 Penn. St. 164; Loomis v. Stewart, 39 N. W. 660; Lampson v. Arnold, 19 Iowa, 479; Mayner *et al.* v. Hellman, 1 Otto, 496; Kelstadt v. Reilly, 55 How. Pr. 373; Palmer v. Mason, 42 Mich. 146; Flint on Trusts and Trustees, Sec. 226.

While the assignment in question was executed in Texas, the same law will be presumed to exist there as in our own state. Buchanan v. Hubbard, 21 N. E. 538. The instrument in the case at bar is not a mortgage. Burrell on Assignments, p. 11. Actual assent of creditors to such an assignment is not necessary; it is presumed. Simonton v. Bank, 24 Minn. 216; Burrell on Assignments, § 284; Flint on Trusts, § 233.

A voluntary assignment for benefit of creditors requires a trustee and implies a trust. A trustee should be named in the instrument. Flint on Trusts, § 226; Burrill on Assignments, 349; Langdon v. Thompson, 25 Minn. 509; Butterfield v. Macomber, 22 How. Pr. 151; Mellen v. Hamilton, 17 N. Y. 611; Ogden v. Prentice, 33 Barb. 162; Shaller v. Wright, 28 N. W. 460.

Under general allegation of assignment of title, plaintiff may show an assignment for benefit of creditors. Dambmann v. White, 48 Cal. 439; Halleck v. Mixer, 17 Cal. 474; Barfield v. Price, 40 Cal. 535; Rockwell v. Brown, 54 N. Y. p. 211; The defendant cannot question this assignment, except in so far as it will be protected in the payment of the claim sought to be collected. Sheridan v. Mayor, 68 N. Y. 30; Walburn v. Chenault, 23 Pac. 659.

CORSON, J. This was an action on a fire insurance policy. Verdict and judgment for defendant. On motion of plaintiff a new trial was granted, and from this order the defendant has appealed to this court. On the trial, plaintiff, to prove the issue of ownership of the policy in controversy in this action, which he had alleged in his complaint had been duly assigned to him by one Harrison, to whom the policy was issued, offered in evidence a certain instrument in writing from Harrison to himself, claimed by plaintiff to be an assignment for the benefit of creditors. The document was objected to by defendant for the reason that it shows upon its face that it is not an assignment; that it appears upon the face of the document that the plaintiff is only an agent of the said Harrison; that the plaintiff is not the real party in interest; and that it is incompetent and immaterial. The court sustained the objection, and on motion of defendant's counsel directed a verdict for defendant. Subsequently the court, on motion of plaintiff, granted a new trial on the ground that the court erred in refusing to admit the so-called "assignment" in evidence. As it affirmatively appears from the record that the new trial was granted upon the ground of errors of law occurring at the trial in excluding the said assignment, the only question presented to this court is a legal one, and no question of the discretion of the court below is involved. Smith v. Dragert, 21 N. W. Rep. 46, 61 Wis. 223; Fairbanks v. Holliday, 17 N. W. Rep. 675, 59 Wis. 80. The document offered in evidence is as follows: "State of Texas, County of Colorado—ss.: Whereas, my hospital, house and fixtures, etc., situated in Columbus, Colorado county, Texas, were destroyed by fire on the night of the 12th of September,

1887; and, whereas, I had previous thereto obtained fire insurance on said property in the various companies herein named; and whereas, I am largely indebted to the persons and in the amounts and in the obligations herein named; and whereas, I wish to secure said parties in said indebtedness, and pay the same out of the proceeds of said fire insurance: Know all men by these presents, that I, R. H. Harrison, for and in consideration of the sum of $10.00 to me in hand paid by E. J. Sandmeyer, the receipt of which is acknowledged, and for the consideration stated above, and for the considerations hereinafter stated, have, and by these presents do, transfer and assign to the said E. J. Sandmeyer, for the purpose of securing the following claims due and owing the following parties, the following fire insurance on the above described and named property." Here follows a description of a number of notes and accounts claimed to be due from Harrison to the persons named, amounting to about $9,000, and a description of 12 insurance policies issued to said Harrison by different insurance companies, amounting to about $15,000, among which is the policy in controversy in this action. The document then proceeds: "And the said E. J. Sandmeyer is fully authorized and empowered to collect every one and all of said fire policies, and to surrender each and all of them, to receipt in my name for all and any amounts which shall be paid on losses under said policies, and the receipt of said Sandmeyer to said companies shall be binding on me. And the said Sandmeyer shall distribute *pro rata* among the creditors named above whatever amounts he shall collect or shall be paid on said fire policies; and if the amounts collected shall be sufficient to pay all of said claims, then the said Sandmeyer shall pay them all off, and, if any amount remains he shall pay the same over to me; the assignment of said policies being for the protection of all the named creditors equally in respect to the claims of each. And if only a portion of the losses of said policies be collected, and there be not enough to pay off said debts, the amount collected is to be divided *pro rata* according to the respective debts. The said companies are in no way to be bound as to the disposition of

the funds collected on losses from their respective companies; the receipt of said Sandmeyer being and intended to be a complete protection to them. In witness of which I hereto set my hand, this 20th day of September, 1887. R. H. HARRISON. [Signature.]" The document was witnessed, acknowledged, accepted in writing by Sandmeyer, and recorded in the office of the clerk of Colorado county, Tex.

No evidence was offered by either party as to the law of Texas upon the subject of assignments, and hence this court will presume that the general law of Texas upon this subject is the same as that of our own state. Buchanan v. Hubbard, (Ind. Sup.) 21 N. E. Rep. 538. It will be observed that the instrument does not purport to be made by an insolvent debtor, or to include either all the property or debts of said Harrison, and hence does not constitute an assignment under our statute, or one that will be governed by the statute law of this state relating to assignments by insolvent debtors. If an assignment on its face does not purport to be of all the assignor's property it will be treated as a partial assignment. Seaving v. Brinkerhoff, 5 Johns. Ch. 329; Lentilhon v. Moffit, 1 Edw. Ch. 450; Burrill, Assignm. c. 10, p. 101, note. It is contended by the defendant (1) that the document offered is only a power of attorney, authorizing plaintiff to collect certain insurance policies and pay certain debts; and (2) if not a power of attorney, then it is simply an assignment in the nature of a mortgage to secure certain creditors; and that in neither case is there an absolute transfer of the legal and equitable title to the plaintiff as assignee that will authorize him to maintain this action in his own name. That an assignment for the benefit of creditors that purports to convey to the assignee the absolute legal and equitable title to the assigned property charged with a trust to pay debts constitutes the assignee the "trustee of an express trust," who is authorized by Section 4872, Comp. Laws, to bring an action in his own name, seems to be the settled doctrine of the courts. Pom. Rem. § 178; Bliss Code Pl. § 262; Lewis v. Graham, 4 Abb. Pr. 106; Mill Co. v. Vandall, 1 Minn. 246, (Gill. 195;) Foster v. Brown, 65 Ind. 234; Wheeler v. Haw-

kins, 101 Ind. 486; Butterfield v. Macomber, 22 How. Pr. 150. And this would be the same, we apprehend, whether the assignment be general or partial. But to have this effect the assignment must convey and transfer the absolute legal and equitable title to the assignee, free from all control of the assignor. It must be an absolute appropriation of the property to the payment of the debts. It must pass both the legal and equitable title to the property absolutely beyond the control of the assignor, except, perhaps, as to the unemployed balance after the payment of the debts, which would naturally revert to the assignor. But when a debtor transfers money or property to a third person to pay to his creditors, without transferring the absolute legal and equitable title, the relation of such third person to the debtor is that of an agent, until the creditor assents to the transaction; and until such consent the debtor may revoke the intended appropriation; and, when collections are to be made by the agent in the name of the debtor, and the business transacted in the debtor's name, the title to the property remains in the debtor, and an action must be brought in the debtor's name. Lazarus v. Swan. (Mass.) 17 N. E. Rep. 655; Brockmeyer v. Bank, (Kan.) 19 Pac. Rep. 855; Simonton v. Bank, 24 Minn. 216; Christmas v. Russell, 14 Wall. 70; Comley v. Dazian, 114 N. Y. 161, 21 N. E. Rep. 135; Kelly v. Roberts, 40 N. Y. 432; West v. White, (Mich.) 22 N. W. Rep. 217; Witter v. Little, (Iowa,) 23 N. W. Rep. 909; Watson v. Bagaley, 12 Pa. St. 164.

The record in the case at bar discloses no evidence or offer of evidence to show that the creditors of Harrison had assented to the assignment or had any knowledge of it from which an assent on their part could be inferred. In the United States the assent of creditors to a general assignment by a debtor of all his property absolutely for the benefit of all his creditors will be presumed as being for the benefit of the creditors. See Halsey v. Whitney, 4 Mason, 206; Townsend v. Harwell, 18 Ala. 301; Fellows v. Bank, 6 Rob. (La.) 246. But no such assent will be presumed in the case of a partial assignment which may or may not be for their benefit. Creditors are not bound

by a partial assignment unless they expressly assent to it, or pursue such a course in reference to it that courts will presume such consent.

With these preliminary observations we will proceed to examine the so-called "assignment." An analysis of it shows, we think, that it is not an absolute transfer of the title to the property described, but that it is in the nature of a security by Harrison for his indebtedness. It will be observed that after reciting losses, indebtedness, etc , it recites: "And whereas, I wish to secure said indebtedness and pay the same out of the proceeds of said insurance," etc. Then follows what purports to be a transfer of the property, but which is qualified by the clause, "for the purpose of securing the following claims due and owing the following parties." After a description of the debts and the policies claimed to be assigned is the following clause: "And the said E. J. Sandmeyer is fully authorized and empowered to collect every one and all of said fire policies, and to surrender each and all of them, to receipt in my name for all and any amounts which shall be paid on losses under said policies, and the receipt of said Sandmeyer to said companies shall be binding on me." It will thus be seen that all collections are to be made and receipted for in the name of Harrison, and the receipts so made shall be binding on him. By implication, therefore, no other receipts would be binding upon Harrison; and this view seems to be supported by the following clauses: "The said companies are in no way to be bound as to the disposition of the funds collected on losses from the respective companies," and "the receipt of said Sandmeyer being and intended to be a complete protection to them." What receipts of Sandmeyer? Obviously the receipts in the name of Harrison therein provided for, and authorized by Harrison. Had the assignment been intended as an absolute one, for what purpose could these various clauses have been inserted? It is true that in assignments for the benefit of creditors there is usually a general and irrevocable power of attorney; not, however, authorizing the assignee to act in the name

of the assignor, but in his own name, as assignee, to do all the acts the assignor might do had he continued the owner of the property.

To hold this document as assignment vesting absolutely the legal and equitable title in plaintiff, and thereby conferring upon him authority to bring this suit in his own name, requires us to disregard or treat as surplusage too many clauses in the instrument. To do this we must hold that the terms "secure" and "securing," as used in two separate clauses, are without meaning, or construe them to mean "payment," and that the clause, "receipt in my name," must be disregarded or treated as surplusage, as well as the last two clauses of the instrument. The form of an assignment for the benefit of creditors has been so long in use and is so well understood that the departure therefrom in this instrument clearly indicates a design to make it simply a security in the nature of a mortgage, with the ordinary power of attorney added, authorizing plaintiff, Sandmeyer, to proceed and collect the policies in the name of Harrison, and pay off the debts designated; and until it was shown that the creditors named in the instrument assented to it, or at least were shown to have notice of it, the power was revocable by Harrison. Construing the instrument as a security in the nature of a mortgage, subject to the assent or acceptance of the creditors named therein, effect can be given to all the clauses. A mortgage under our statute is defined by Section 4346, Comp. Laws, as follows: "Mortgage is a contract by which specific property is hypothecated for the performance of an act without the necessity of a change of possession." A mortgagee, therefore, in this state, only has a lien upon the property; not the legal title, as at common law. Treating it then, as a security with a power of attorney added, it is clear the plaintiff was not such a trustee of an express trust as the statute contemplates as authorized to sue in his own name. The distinction between an assignment which transfers absolutely the legal and equitable title and a mortgage is clearly stated by Mr. Burrill in his work on Assignments, p. 11. He says: "An assignment is more than a security for the payment of debts;

it is an absolute appropriation of property to their payment. It does not create a lien in favor of creditors upon any property which in equity is still regarded as the assignor's, but it passes both the legal and equitable title to the property absolutely beyond the control of the assignor. There remains, therefore, no equity of redemption in the property, and the trust which results to the assignor in the unemployed balance, does, does not indicate such an equity.''

It is no doubt true, as claimed by the learned counsel for respondent, that no particular form of words is required to constitute an assignment for the benefit of creditors, but it must appear that the assignment is absolute, so as to vest the legal and equitable title to the property in the assignee, free from all control of the assignor, and thereby enable the assignee to transact all the business pertaining to the property in his own name as assignee, and not in the name of the assignor. In the case at bar the so-called "assignee" has no authority to make any collections of the policies designated in the instrument, except in the name of the assignor. The so-called "assignee" is simply made the agent of the debtor to proceed in his name. The powers of an agent are only such as are conferred by the instrument. Brewster v. Carnes, 103 N. Y. 556, 9 N. E. Rep. 323; Rich v. Smith, 82 N. Y. 627. While, therefore, by the instrument it appears by the granting clause that a transfer of the policies as a security was intended, the subsequent clauses limit and restrict the power of the assignee, and convert him into an agent of the debtor. The learned counsel for respondent quotes a portion of the opinion of Chief Justice GIBSON in Watson v. Bagaley, 12 Pa. St. 164, but the whole opinion, we think, is against the position of respondent. In that case it appeared that the preferred creditors had assented to the assignment, as they were the parties contesting the matter with the attaching creditors, and the debts specified had been collected. See comments upon this case by STRONG, J., in Beans v. Bullit, 57 Pa. St. 221. In the case at bar the creditors of Harrison would, in case they had assented to the assignment, have an equitable interest in the moneys when col-

lected, and in the hands of Sandmeyer, although he might collect it, as he is only authorized to do, in the name of Harrison. But this in no way effects the question before us. There being, no absolute transfer of these policies vesting the legal and equitable title in Sandmeyer, free from the control of Harrison, and Sandmeyer not being the real party in interest, and not being the trustee of an expressed trust, as contemplated by the statute, was not authorized to bring the action in his own name, and the court properly refused to admit the so-called "assignment" in evidence, and therefore erred in granting the new trial. The learned counsel for the appellant presented two other important and interesting questions arising in this case,—one being whether or not an assignment not made in accordance with our statute will be recognized in this state, and the second being the question of practice in suits by an assignee, and whether or not he must set out his title in full in the complaint; but, as we do not deem it necessary in this case to discuss these questions, we express no opinion in regard to them. The order granting a new trial is reversed.

BENNETT, J., concurring.

KELLAM, P. J., did not sit in this case, or take any part in the decision.